UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

-v- Case No. 12-cr-20101

GREGORY McKNIGHT,

Defendant.
____________________________/

DEFENDANT'S PLEA OF GUILTY

BEFORE THE HONORABLE MARK A. GOLDSMITH

Flint, Michigan, Thursday, February 16th, 2012.

APPEARANCES:

FOR THE PLAINTIFF: A. TARE WIGOD
U.S. DEPARTMENT OF JUSTICE
600 Church Street, Room 210
Flint, MI 48502

FOR THE DEFENDANT: EDWARD C. WISHNOW
240 Daines
Birmingham, MI 48009-6241

David B. Yarbrough, CSR, FCRR
Official Court Reporter
(313) 410-7000

TABLE OF CONTENTS

PAGE

WITNESSES:

NONE

EXHIBITS

| | (Identified) | (Admitted) |
|---|---|---|
| NONE | | |

Flint, Michigan
Thursday, February 16th, 2012.
At or about 10:40 a.m.

-- --- --

THE CLERK OF THE COURT: Please rise. The United States District Court for the Eastern District of Michigan is now in session, the Honorable Mark Goldsmith presiding. You may be seated. Calling case number 12-20101, United States versus Gregory McKnight. Counsel, please state your names for the record.

MR. WIGOD: Good morning, your Honor. Tare Wigod on behalf of the government.

MR. WISHNOW: Good morning. Edward Wishnow on behalf of the defendant.

THE COURT: All right, good morning. How are we going to proceed this morning?

MR. WIGOD: Your Honor, I believe Mr. McKnight wishes to change his plea from not guilty to guilty this morning. He has executed a Rule 11 plea agreement which we have tendered to the Court.

MR. WISHNOW: That is correct.

THE COURT: All right. Counsel, you want to escort your client to the podium?

MR. WISHNOW: Yes.

THE COURT: And we'll place him under oath. Raise

your right hand, please?

THE CLERK OF THE COURT: Do you solemnly swear or affirm under the penalty of perjury that the testimony you're about to give in the cause now pending before this Court shall be the truth, the whole truth and nothing but the truth?

THE DEFENDANT: I do so affirm.

THE COURT: All right. What is your name, sir?

THE DEFENDANT: Excuse me, sir, your Honor?

THE COURT: What is your name?

THE DEFENDANT: My name is Greg McKnight.

THE COURT: Is that your full name?

MR. WISHNOW: Gregory.

THE COURT: What is your date of birth?

MR. WISHNOW: My date of birth is February 20th, 1960.

(Pause)

THE COURT: All right, let's start again then. Give us your full name, please?

THE DEFENDANT: Gregory McKnight.

THE COURT: All right. Mr. McKnight, a few matters I want to take up before we get into the plea-taking. First of all you should understand that you've taken an oath so that if you give me any intentionally false answers to any of my questions, you would be subjecting yourself to prosecution for the crime of perjury and you could be separately punished for

that in addition to any punishment that you would receive for the offense that brings you to court this morning. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You have an attorney by your side. If at any time you need to speak with him about anything, you're free to do so. If you need private space to do that, we'll take a break in the proceedings, give you an opportunity to talk with your attorney in private. I would not be privy to that conversation of course nor would the attorney for the government. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now your attorney announced that it's your intention to plead guilty, but if at any time during this proceeding today you decide that you don't want to plead guilty, you're under no obligation to plead guilty. You can stop the proceeding at any time and this case would then remain on our trial docket. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: What is your date of birth?

THE DEFENDANT: February 20th, 1960.

THE COURT: Are you a citizen of the United States?

THE DEFENDANT: Yes, I am.

THE COURT: Can you read, write and understand the English language?

THE DEFENDANT: Yes, I can.

THE COURT: Can you hear and understand me?

THE DEFENDANT: Yes, I can.

THE COURT: Are you under the influence of any kind of drugs or medication?

THE DEFENDANT: No, I am not.

THE COURT: Have you ever been treated for any addiction to any drugs of any kind?

THE DEFENDANT: I didn't hear the --

THE COURT: Have you ever been treated for addiction to drugs of any kind including alcohol?

THE DEFENDANT: No, I have not.

THE COURT: How far did you get in school?

THE DEFENDANT: I graduated high school and I have classes up in higher education, but no degree.

THE COURT: Does that mean you went on to college?

THE DEFENDANT: I was U.S. Navy and took college courses through, umm, through there.

THE COURT: Now you understand that you've been charged in this case by way of an Information; is that correct?

MR. WIGOD: Yes, your Honor. The defendant executed a waiver of his right to proceed by grand jury.

THE COURT: All right. Did the magistrate go over that with him?

MR. WIGOD: He did.

THE COURT: All right. Sir, you understand that the government has charged you in a document called the an Information?

THE DEFENDANT: Yes.

THE COURT: And it's already been explained to you that you had a right to have the document (sic) proceed by way of a document called an Indictment before a grand jury and that you've waived your right to have the government proceed in that fashion?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now this Information charges you with one count of wire fraud. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you have a full opportunity to talk to your attorney about this charge against you?

THE DEFENDANT: Yes, I did, sir.

THE COURT: And did you explore with him all of your options regarding how to proceed in this case, whether to plead guilty or not guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you explore all possible defenses with him?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you ask him all of the questions that you wanted to ask him regarding your defense in this matter?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did he answer all of those questions to your satisfaction?

THE DEFENDANT: Yes, he did.

THE COURT: Are you satisfied fully with the services he's performed for you here?

THE DEFENDANT: Yes, I am.

THE COURT: Do you need any more time now to talk to him about your decision whether to pled guilty or not?

THE DEFENDANT: No, your Honor.

THE COURT: I've been presented with a document called Rule 11 plea agreement. You've seen that document?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now did you read it?

THE DEFENDANT: Yes, I did.

THE COURT: And did you read all of it?

THE DEFENDANT: Yes, I did.

THE COURT: Do you believe you understand everything that's in there?

THE DEFENDANT: Yes, I do.

THE COURT: This document has a signature on page 14 above the typed name Gregory McKnight. Is that your signature?

THE DEFENDANT: That is my signature.

THE COURT: You signed this document?

THE DEFENDANT: Yes, I did.

THE COURT: Did you sign it after you had read it?

THE DEFENDANT: Yes, I did.

THE COURT: And did you sign it after asking your attorney any questions you wanted to about it?

THE DEFENDANT: Yes, I did.

THE COURT: Did he answer all of your questions to your satisfaction regarding this Rule 11 plea agreement?

THE DEFENDANT: Yes, he did.

THE COURT: Do you need any more time now to talk to him about this Rule 11 plea agreement?

THE DEFENDANT: No, I do not.

THE COURT: Do you understand that this agreement purports to be the agreement between you and the government regarding your guilty plea?

THE DEFENDANT: Yes, I do.

THE COURT: Did anybody force you to sign this document?

THE DEFENDANT: No.

THE COURT: Did anybody threaten you or any member of your family to get you to sign this document?

THE DEFENDANT: No.

THE COURT: Did anybody make any promises to you to get you to sign this document other than the promises that are contained in the document?

THE DEFENDANT: No.

THE COURT: Did you sign it completely out of your own free will?

THE DEFENDANT: Yes, I did.

THE COURT: Now I want to go through the Rule 11 plea agreement with you to make sure that you understand what it says and if at any time you have any questions, you should ask your attorney about that, all right?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now this Rule 11 plea agreement says that you are going to enter a plea of guilty to count one of the Information. That count charges you with wire fraud in violation of 18 United States Code, Section 1343. You understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now a violation of that part of our law carries a maximum period of imprisonment under the statute of 20 years. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: It also provides in the statute for a fine not to exceed 250,000 dollars. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: It also provides for supervised release of not more than three years. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now did you talk with your attorney about

the concept of supervised release?

THE DEFENDANT: Yes, I did.

THE COURT: You understand that we no longer have a parole system in the federal criminal justice system and that that's been replaced by the concept of supervised release?

THE DEFENDANT: Yes, your Honor.

THE COURT: Under supervised release, you are released back to the community after you serve your term of imprisonment. You must observe certain conditions. If you violate any of those conditions, then you can be sent back to prison because of those violations and you would serve additional time beyond the term of imprisonment initially set by the Court. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: I'd like you to take a look at page two of the agreement. There's a heading at the top that says Elements of Offense. Do you see that?

THE DEFENDANT: Yes, I do.

THE COURT: Elements of Offense refers to the various parts of the crime that the government has to prove beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: There are three elements to the offense with which you're charged. One is that you devised a scheme to defraud or to obtain money by materially false or fraudulent

pretenses, representations or promises or by material omissions; second, that you acted with the intent to defraud and third, that in advancing, furthering or carrying out the scheme, you transmitted any writing, signal or sound by means of a wire, radio or television communication in interstate commerce or caused the transmission of any writing, signal or sound of some kind by means of a wire, radio or television communication in interstate commerce. Do you understand those three elements of the offense?

THE DEFENDANT: Yes, I do.

THE COURT: Do you believe that the government could prove each of those elements beyond a reasonable doubt?

THE DEFENDANT: Yes, I do.

THE COURT: Now starting on page two and carrying over through page five is a recitation called Factual Basis for Guilty Plea. Do you see that?

THE DEFENDANT: Yes.

THE COURT: And did you read that carefully before you signed this Rule 11 plea agreement?

THE DEFENDANT: Yes, I did.

THE COURT: Is every statement in that Factual Basis for Guilty Plea true?

THE DEFENDANT: Yes.

THE COURT: Do you believe that the government could prove all of those statements true beyond a reasonable doubt?

THE DEFENDANT: Yes, I do.

THE COURT: Now in that Factual Basis for Guilty Plea, it says that you're a resident of Schwartz Creek, Michigan, and that you've been residing in the Eastern District of Michigan since at least 2005. Is that true?

THE DEFENDANT: Yes.

THE COURT: Says that you were the founder, owner and president of, how do you pronounce that? Legisi?

THE DEFENDANT: Yes, sir.

THE COURT: Legisi Holdings, LLC and in those capacities you control the day-to-day business activities of Legisi Holdings, LLC which was chartered in Nevis, West Indies. All that true?

THE DEFENDANT: Yes.

THE COURT: Says that in December 2005 that you through Legisi Holdings began offering and selling interest in a pooled investment program called Legisi, an acronym for Lucrative Electronic Gold Income Services International. Is that true?

THE DEFENDANT: Yes.

THE COURT: Says that you promoted the offering around the world through a publicly-available Internet website at www.legisi.com. Is that true?

THE DEFENDANT: Yes, it is.

THE COURT: It says that through the representations

made on this website, you raised approximately 72 million dollars from over 3,000 members of the public from December 2005 to at least November, 2007. Is that true?

THE DEFENDANT: Yes.

THE COURT: It says the persons who invested in Legisi resided in all 50 states and several foreign countries. True?

THE DEFENDANT: True.

THE COURT: It says that through the Legisi website, you raised money on promises that you would invest the funds given to you by an investor and pay the investor with profits derived from the investments. Is that true?

THE DEFENDANT: Yes.

THE COURT: Says that you represented that your investment activities consistently generated a monthly profit ranging from 15 percent to 18 percent. Is that true?

THE DEFENDANT: Yes.

THE COURT: Says that you represented that the investments that you made with the investors' money were profitable. Is that true?

THE DEFENDANT: Yes.

THE COURT: It says that from these purported profits, you promised to pay the investors returns ranging from 7.5 percent per month to 15 percent per month. Is that true?

THE DEFENDANT: Yes.

THE COURT: This also says that you represented that you set aside 10 percent of all investing profits each month to create a reserve fund for the benefit of Legisi investors in the event that your investing did not meet the anticipated profit. Is that true?

THE DEFENDANT: Yes.

THE COURT: It also says that you had claimed that you had put profits into a reserve fund until it totalled 110 percent of the total investor's principal that Legisi received. True?

THE DEFENDANT: True.

THE COURT: Is says that your representations to investors and potential investors were materially false and misleading -- strike that, were materially false and misleadingly omitted material facts. True?

THE DEFENDANT: True.

THE COURT: It says that of the approximately 72 million dollars that you raised from investors, you invested actually only 33 million dollars. True?

THE DEFENDANT: That is true.

THE COURT: This also says that contrary to what you represented to investors, your investments in fact generated significant losses. True?

THE DEFENDANT: True.

THE COURT: It says that in total, you realized

losses totalling approximately 3.6 million dollars on the investments that you made with Legisi investor money. True?

THE DEFENDANT: That's true.

THE COURT: It also says that contrary to what you represented, you did not put investing profits into a reserve fund for the benefit of investors. True?

THE DEFENDANT: That's true.

THE COURT: It says that instead, in a manner of a classic Ponzi scheme, you used new investor funds to meet the periodic redemption requests of other investors. True?

THE DEFENDANT: That's true.

THE COURT: It says that the source the money paid out to investors was not derived from profits from your investments, but from new investor funds. True?

THE DEFENDANT: That is true.

THE COURT: It says that you did not disclose that the money paid out to investors was funded by money obtained from other investors. True?

THE DEFENDANT: That is true.

THE COURT: It says that over 1,500 investors lost money in your scheme to defraud with losses totalling more than 20 million dollars, but less than 50 million dollars. Is that true?

THE DEFENDANT: That's true.

THE COURT: It says that you used approximately 2.2

million dollars of investor funds to pay personal expenses such as motor vehicles, home repairs and renovations, vacations and travel, credit card bills and other payments for the benefit of your family members. Is that true?

THE DEFENDANT: That's true.

THE COURT: It says that in furtherance of this scheme to defraud, you frequently utilized wire communications in the form of Internet postings, electronic mail communications and wire transfers of currency all of which were transmitted from or caused to be transmitted from the Eastern District of Michigan. Is all that true?

THE DEFENDANT: That is true.

THE COURT: One such transaction occurred on March 28, 2007 when you wired approximately 334,000 dollars of investor-originated funds from your electronic currency account, an account number B75831 located outside the Eastern District of Michigan to your bank account at the Flint branch of Fifth-Third bank company, number 7911431463, located in the Eastern District of Michigan. Is that true?

THE DEFENDANT: That is true.

THE COURT: It says that the money was used by you to either continue the perpetration of fraud or for your own personal gain. Is that true?

THE DEFENDANT: That's true.

THE COURT: This Rule 11 plea agreement also says

that the computer served -- pardon me, that the computer server that housed investor data and web services was located in the country of Panama. Is that true?

THE DEFENDANT: That is true.

THE COURT: It says that during the course of the scheme to defraud you caused the computer server to be moved from the United States to Panama for the purposes of avoiding regulatory officials. Is that true?

THE DEFENDANT: That is true.

THE COURT: Now the plea agreement talks about sentencing guidelines. Did you discuss with your attorney the concept of sentencing guidelines and how they would apply in your case?

THE DEFENDANT: Yes I did, your Honor.

THE COURT: Do you feel that you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Let me elaborate a bit on sentencing guidelines. If I accept your guilty plea, there will be a sentencing. Prior to that time there will be a presentence investigation report prepared. You'll have input into the preparation of that report as will your attorney. Your attorney can lodge any objections to any matter contained in the report. I'll rule on those objections.

At the hearing I'll have reviewed the report. I'll listen to anything you want to tell me or your attorney wants

to tell me and what the attorney for the government may want to tell me and any victims of the crime. Based on all of that, I will fashion a sentence, consulting with all of the applicable authorities including 18 United States Code, Section 3553 which sets forth various factors that a Court must take into account in deciding upon a sentence.

One of the factors that the law says I must take into account are the sentencing guidelines. Those are advisory and not mandatory, but I do need to calculate them and take them into account, at least consider them. I'm not bound by them. In your case, the presentence -- strike that, the Rule 11 plea agreement calculates your guidelines to be 151 months to 188 months. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: The Rule 11 plea agreement says that that guideline range may actually go up in certain circumstances. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: It says that the guideline range can go up if your criminal history category turns out to be higher than what is reflected on the attached worksheets. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Also says that the guideline range can go higher if it turns out that the offense level should be higher

because after pleading guilty, you make any false statement or with hold information from the probation officer or you commit a new offense or you otherwise demonstrate a lack of acceptance of responsibility for this offense or if you obstruct justice and if any of those findings would result in a higher guideline range, then your guideline range would be higher than 151 months to 188 months. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you understand the United States attorney is recommending a three level reduction in your guidelines for acceptance of responsibility?

THE DEFENDANT: Yes.

THE COURT: Now under the Rule 11 plea agreement, the Court is to impose a sentence that is not higher than the guideline range that's set forth in this agreement. That guideline range is 151 to 188 months unless one of the circumstances that I just discussed with you turns out to be the case in which case the Court can sentence you to the maximum of the higher guideline level. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: The Rule 11 plea agreement further states that there's no agreement regarding supervised release and the Court can impose any term of supervised release up to the statutory maximum which is three years. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: The agreement also says that you will be required to pay a special mandatory assessment of 100 dollars and that the Court can impose a fine of up to 250,000 dollars? Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: The Rule 11 plea agreement says that you and the government have agreed that the full amount of restitution in this case is 48,969,560 dollars. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: This agreement provides that the Court will determine who the victims are and the individual amounts of restitution that are owed. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: This also says that you agree along with the government that the Court may in its discretion accept the determination of the receiver for the estates of Legisi Marketing, Inc., and other entities, Robert Gordon, who is appointed in the case in here in the Eastern District of Michigan, number 08-11887, entitled United States Securities and Exchange Commission v. McKnight. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: The agreement also says that the parties recognize that the amount of restitution owed by you may change

over time the and that the receiver may in the future recover funds that could off-set the amount of restitution owed by you and in that case the party in disagreement may move the Court to amend the order of restitution? Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: Now each party to this agreement has certain rights to withdraw from it. The government has the right to withdraw from the agreement if the Court finds that the correct guideline range is less than the one recommended by the government. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: This agreement provides that you may withdraw from the agreement as well as withdraw your guilty plea if the Court decides to impose a sentence that is higher than the maximum allowed under this agreement. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that that's the only reason for which you may withdraw from this agreement?

THE DEFENDANT: Yes, I do.

THE COURT: This agreement also says that if you decide not to withdraw your guilty plea under this provision, then the Court can impose a sentence that's higher than the sentence that's allowed under the agreement. Do you understand

that?

THE DEFENDANT: Yes, I do.

THE COURT: There's also a waiver of certain appeal rights. I want you to understand those. If the sentence imposed doesn't exceed the maximum allowed by the agreement, you are waiving your right to appeal your conviction or sentence on any grounds. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: If the sentence imposed is within the guideline range allowed under the agreement, then the government agrees not to appeal the sentence, but it retains its right to appeal any sentence below that range. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Generally defendants have a right to attack their convictions and sentences by filing post-conviction motions, petitions or independent civil actions, but as part of this agreement you are waiving or giving up that right and you're agreeing not to contest your conviction or sentence in any post-conviction proceeding including, but not limited to any proceeding under 28 United States Code, Section 2255. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you have any questions at all about this Rule 11 plea agreement?

THE DEFENDANT: No, I do not.

THE COURT: Do you understand that the offense to which you are pleading guilty is a felony?

THE DEFENDANT: Yes, I do.

THE COURT: Now that means that with a felony conviction, you may be deprived of certain valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess or own any kind of firearm?

THE DEFENDANT: Yes, I do.

THE COURT: I want you to understand the rights that you're giving up by pleading guilty and if at any time you don't understand anything that I say, then you need to stop me and I'll explain further. First of all do you understand that you have a right to plead not guilty and to maintain that plea throughout these proceedings?

THE DEFENDANT: Yes, I do.

THE COURT: You understand that if you maintained a plea of not guilty, you'd have a right to a trial?

THE DEFENDANT: Yes, I do.

THE COURT: And you have a right to have a trial by jury?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that if we had a jury trial, we'd select 12 people from the community to sit in the

jury box, they would listen to all of the evidence submitted and then it would be the jury's job to determine whether or not the government had proven its case against you beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that that would be the jury's decision, not my decision?

THE DEFENDANT: Yes, I do.

THE COURT: At the trial, you'd be presumed to be innocent and the government would have to prove you guilty beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that throughout the trial you would have the right to the assistance of counsel, indeed at every stage of the proceedings you have the right to the assistance of counsel. If you could not afford one, the Court would appoint counsel for you. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you'd have the right to see and hear all of the witnesses against you, to have your lawyer cross-examine them, you'd have the right to bring in witnesses to testify on your behalf, you'd have the right to testify yourself if you wanted to or you could decline to testify if you didn't want to. If you wanted to call witnesses who did not want to attend, you'd be able to use the Court's

subpoena powers to force those witnesses into court to testify. Do you understand all those rights?

THE DEFENDANT: Yes I do, your Honor.

THE COURT: And do you understand that by pleading guilty you'd be giving up all of those rights?

THE DEFENDANT: Yes I do, your Honor.

THE COURT: Do you understand that at the trial you would not have to put on any evidence at all, you would not have to testify, you would not have to call any witnesses? Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And do you understand that if you didn't testify or didn't call witnesses or put on any evidence, that those facts could not be used against you?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that by pleading guilty if I end up accepting that guilty plea, there would be no trial of any kind whatsoever?

THE DEFENDANT: Yes, I understand.

THE COURT: Do you understand then that you would be giving up all of these rights associated with the trial that I have just described for you?

THE DEFENDANT: Yes, I do.

THE COURT: I want to go back to sentencing for just a minute because I want you to understand that while the

guideline range is advisory and not mandatory, the law does allow me also to depart upward or downward from the guideline range taking into account various factors that the law allows me to take into account. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Are there any other questions either counsel wants put to the defendant?

MR. WIGOD: Nothing from the government, thank you.

MR. WISHNOW: Not by the defendant, thank you.

THE COURT: All right. Mr. McKnight, I have two questions then for you. First question is how do you wish to plead in this case, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: My next question is are you pleading guilty because you believe you are guilty?

THE DEFENDANT: Yes, I am.

THE COURT: All right. It is the finding of this Court in this case that the defendant is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea and that his guilty plea is a knowing and voluntary one supported by an independent basis in fact containing each of the essential elements of the offense. I therefore accept the guilty plea.

I take the Rule 11 plea agreement under advisement and the defendant is now adjudged guilty of the offense

charged. We are going to set a sentencing date. I have June 19, 2012 at 1:30 p.m. Does that work for everybody?

MR. WIGOD: Yes, Judge.

MR. WISHNOW: I'm sorry. What was the time again?

THE COURT: 1:30.

MR. WISHNOW: I just had a trial adjourned with Judge Tarnow yesterday to commence on June 4, fairly lengthy trial and I don't know if we're going half days to be --

THE COURT: Do you want it later in the afternoon?

MR. WISHNOW: I, I don't know if we're full days or half days. Let's set it today for that afternoon and if it turns out we're going full days, I'll notify your case manager and we can adjust accordingly, okay?

THE COURT: Okay, that's fine. June 19, 2012, 1:30. Defendant is ordered to appear at that time. Is there any issue of him remaining on bond?

MR. WIGOD: None, your Honor.

THE COURT: All right. The bond will continue. Defendant is still required to observe all conditions of the bond. I'm going to order that a presentence investigation report be prepared. Defendant will participate in the preparation of it. Defense counsel will participate as well. Is there anything else?

MR. WIGOD: Nothing from the government.

MR. WISHNOW: Not by the defendant, thank you.

THE COURT: Okay. We'll see you then.

(Plea concluded at 11:16 a.m.)

-- --- --

C E R T I F I C A T E

I, David B. Yarbrough, Official Court Reporter, do hereby certify that the foregoing pages comprise a true and accurate transcript of the proceedings taken by me in this matter on Thursday, February 16th, 2012.

4/15/2013 /s/ David B. Yarbrough

Date David B. Yarbrough, CSR, FCRR
600 Church Street
Flint, MI 48502